UNPUBLISHED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **JOHNNIE R. LARGE,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:00CV00100 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **JO ANN B. BARNHART,** | ) | By: James P. Jones |
| **COMMISSIONER** | ) | Chief United States District Judge |
| **OF SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Roger W. Rutherford, Wolfe, Williams & Rutherford, Norton, Virginia, for Plaintiff; Julie C. Dudley, Assistant United States Attorney, Roanoke, Virginia, and Donna L. Calvert, Regional Chief Counsel, and Allyson Jozwik, Assistant Regional Counsel, Office of the General Counsel, Social Security Administration, for Defendant.*

In this social security case, I remand the case to the Commissioner for further administrative proceedings consistent with this opinion.

## I. Background.

Johnnie R. Large filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for a period of disability and disability insurance benefits ("DIB") under title II of the Social

Security Act, 42 U.S.C.A. §§ 401-433 (West 2003 & Supp. 2005) ("Act").

Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

My review under the Act is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, this court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Id.*

Large applied for benefits on September 5, 1991, alleging disability as of February 28, 1972, due to bursitis, lung problems, and Raynaud's phenomenon.[1] This claim was denied initially and upon reconsideration. Large received a hearing before an administrative law judge ("ALJ") on June 24, 1992. By decision dated September 14, 1992, the ALJ found that the plaintiff was not disabled within the meaning of the Act. The Social Security Administration's Appeals Council denied review on March 5, 1993. The plaintiff moved his residence to North Carolina, and filed suit in the

---

[1] Raynaud's phenomenon or syndrome describes symptoms associated with Raynaud's disease, a vascular disorder marked by recurrent spasm of the capillaries, especially of the fingers and toes upon exposure to cold. *See* U.S. Nat'l Library of Medicine & Nat'l Institutes of Health, Medline Plus, http://www.nlm.nih.gov/medlineplus/ mplusdictionary.html.

Case 2:00-cv-00100-JPJ   Document 14   Filed 01/06/06   Page 2 of 21   Pageid#: 54

United States District Court for the Middle District of North Carolina seeking review of the administrative decision in his case. On March 24, 1994, that court remanded Large's case to the Commissioner for further proceedings on the ground that the ALJ had erred in not calling a vocational expert ("VE") to testify at the hearing.

The Appeals Council remanded the case back to the ALJ on April 29, 1994, and a second hearing was held on July 27, 1994. At this hearing, the plaintiff claimed alcoholism and problems maintaining attention in addition to the ailments cited previously. On January 20, 1995, the ALJ again found that the plaintiff was not disabled. The plaintiff requested review of this decision, but it was not until May 13, 2000, more than five years later, that the Appeals Counsel acted upon that request. The Appeals Council declined review, and the ALJ's 1995 opinion thus constitutes the final decision of the Commissioner.

The plaintiff filed the present action in this court on June 8, 2000, seeking judicial review of the Commissioner's decision denying his application for benefits. However, the cassette tape of the hearing before the ALJ was misplaced, and for this reason the Commissioner moved to remand Large's case for further administrative action. On October 6, 2000, the motion was granted. Further efforts apparently were made to find the tape, but on May 18, 2002, the Appeals Council finally remanded the case to the ALJ for a new hearing and decision.

-3-

Thereafter, the lost tape was found, and on August 28, 2002, counsel for Large agreed in writing to vacate the Appeals Council's order remanding the case to the ALJ for a new hearing and decision. However, it was not until April 22, 2005, that this information was brought to this court's attention in the form of a motion to reinstate the case filed by the Commissioner. The motion to reopen the case was granted on the day that the motion was received. The parties thereafter briefed the issues, and the case is ripe for decision.

## II. Facts.

The plaintiff was born in 1928 and has a seventh grade education. He has past relevant work experience as a welder and coal loader. Large has not worked consistently since his alleged onset date of disability of February 28, 1972. Although the record reflects several attempts to work subsequent to that date, these attempts were of short durations and did not reach the necessary level of earnings. Therefore, he has not engaged in substantial gainful activity at any time subsequent to his alleged onset date and his insured status for purposes of entitlement to DIB expired on December 31, 1978.

In rendering his decision, the ALJ carefully considered the entire record. The record contains medical evidence from the following hospitals and doctors: the

Case 2:00-cv-00100-JPJ   Document 14   Filed 01/06/06   Page 4 of 21   Pageid#: 56

Dickenson Clinic; Haysi Medical Clinic; Robert A. Abernathy, M.D.; G.S. Kanwal, M.D.; Veterans Affairs Medical Center; Sandya I. Gunasekera, M.D.; and Sherif Shoukry, M.D. The ALJ also considered evidence from Edwin L. Bryan, M.D., a state agency medical expert, and Robert H. Ballantyne, Ed.D., a VE, both of whom testified at the administrative hearing.

From June 2, 1971, through April 15, 1974, the plaintiff received treatment at the Dickenson Clinic for various ailments including pneumoconiosis, chronic bronchitis, Raynaud's phenomenon, black out spells, bursitis, shortness of breath, wheezing, and upper respiratory infections. (R. 184-190.)[2] A doctor from the Dickenson Clinic advised the plaintiff to change his occupation due to his medical condition, although the plaintiff instead stopped working entirely at that time. (R. 185.) A doctor at the clinic also advised the plaintiff to stop smoking on at least two occasions. (R. 187, 188.)

Subsequently, from June 25, 1974, through October 7, 1975, the plaintiff attended Southwest Virginia Community Health Services, where he received treatment for right shoulder pain and stiffness, Raynaud's phenomenon, gout, right shoulder bursitis, and possible seizure activity. (R. 97-104.) The record shows that the plaintiff was prescribed Tylenol and Indocin for his right shoulder bursitis and

---

[2] References are to the transcript of the administrative proceedings.

Case 2:00-cv-00100-JPJ   Document 14   Filed 01/06/06   Page 5 of 21   Pageid#: 57

was also using a heating pad.  (R. 99.)  This treatment decreased the pain, and an examination showed that he had full range of motion and normal strength.  (R. 99.)

Robert A. Abernathy, M.D., examined the plaintiff on February 27, 1976, upon referral from a vocational rehabilitation agency.  Large reported stopping work in 1972 due to coal workers' pneumoconiosis.  (R. 191.)  The plaintiff also noted that he smoked one pack of cigarettes per day.  (R. 193.)  The plaintiff reported difficulty with his hearing, shortness of breath, wheezing, coughing, bilateral shoulder and elbow pain, numbness and other problems with his hands, and right forefinger pain. (R. 191-92.)  Audiometric testing revealed a thirty-seven percent impairment in the form of hearing loss, and a chest X ray showed some emphysema.  (R. 194.) Plaintiff's lungs were "quite clear" to percussion and auscultation throughout.  (Id.) An X ray of the plaintiff's right hand revealed possible tendinitis.  (*Id*.)  Dr. Abernathy diagnosed chronic bronchitis, probable bursitis of the olecranon bursa and possibly subdeltoid bursa, sensorineural deafness, and Raynaud's syndrome probably related to nicotine.  (R. 194.)

At the request of Large's attorney, G.S. Kanwal, M.D., examined the plaintiff on March 3, 1977.  The plaintiff reported to Dr. Kanwal that he smoked one and a half packs of cigarettes daily and complained of shortness of breath with cough and worsening  expectoration  of  a  six-year  duration.    (R. 195.)    The  plaintiff  also

-6-

complained of numbness in the fingers and hands with cold feeling that had lasted approximately five years. (*Id.*) Dr. Kanwal noted that pulmonary ventilatory studies were normal but with some obstructive disease. (R. 196.) Dr. Kanwal diagnosed chronic obstructive pulmonary disease with chronic bronchitis and emphysema, clinically and radiologically. (*Id.*) Dr. Kanwal noted that a chest X ray did not show frank evidence of pneumoconiosis, but stated that the plaintiff clearly has a respiratory disease related to his work in coal mines. (*Id.*) Dr. Kanwal thus opined that the plaintiff should not work inside the mines or in any dusty area. (*Id.*) Dr. Kanwal concluded that, in view of the plaintiff's exercise tolerance, it was his opinion that the plaintiff is totally and permanently disabled. (R. 196-97.)

The plaintiff received medical treatment from the Veterans Affairs Medical Center from January 27, 1986, through December 19, 1988. Conditions and complaints addressed included chest pain, left arm pain, hypertension, chronic obstructive pulmonary disease, upper respiratory infection, left heel spur, and coronary artery disease. (R. 105-155.) Records from the Veterans Affairs Medical Center indicate that the plaintiff's chest was clear and pulmonary function studies were within normal limits. (R. 127, 140.) A chest X ray showed no active cardiopulmonary disease. (R. 149.)

The plaintiff underwent a psychiatric evaluation by Sandya I. Gunasekera, M.D., on October 2, 1991. The plaintiff reported feeling depressed because his physical condition had deteriorated, noted that he felt tired ninety percent of the time, and stated that he had had suicidal thoughts in the past. (R. 160.) The plaintiff also explained that he smoked one-and-a-half packs of cigarettes daily and had abused alcohol until 1986. (R. 161.) Dr. Gunasekera diagnosed atypical depressive disorder and concluded that Large had poor to no ability to deal with the public, deal with work stresses, and function independently. (R. 161, 162.) Dr. Gunasekera found that the plaintiff had fair ability to follow work rules, relate to coworkers, use judgment, interact with supervisors, maintain attention, understand complex job instructions, behave in an emotionally stable manner, relate predictably to social situations, and demonstrate reliability. (R. 162-63.)

Sherif Shoukry, M.D., examined the plaintiff on October 24, 1991. Dr. Shoukry noted a twenty-year history of shortness of breath and chest pain. (R. 166.) Dr. Shoukry found that the plaintiff was not short of breath at rest and that his lung sounds were clear in all fields without rales, rhonchi, wheezing, or crackles. (R. 168.) Chest X rays revealed moderate chronic obstructive pulmonary disease.

Large reported to the state agency that his daily activities included cleaning up his camper and pick-up truck, playing solitaire, watching television, driving, and

Case 2:00-cv-00100-JPJ   Document 14   Filed 01/06/06   Page 8 of 21   Pageid#: 60

visiting his children and friends. At his first administrative hearing, Large testified that in 1978 he had tried "dozens of places to get a job, but everybody want[ed] a high school education or something or other." (R. 39.) He testified that in 1978 he had been short of breath and had pain in his arms and shoulders, but that the shots given to him for bursitis had taken away the pain. (R. 37, 39-40.) The plaintiff noted that he had worked for approximately six weeks "burning steel," but was let go after the necessary work had been completed. (R. 35-36.) Large also testified that he had worked mowing grass at a campground in 1986 until the campground had been shut down. (R. 36.) The plaintiff stated that he had had no problems performing either of these jobs. (R. 41-42.)

At his second administrative hearing, Large testified that during his job mowing the campground, he had left the job site on a daily basis to buy a six-pack of beer. (R. 260-61.) Large also explained that the reason he had stopped burning steel in 1978 was actually because he had fallen off a scaffold and cut his leg. (R. 262.) He had been drinking on the job at the time of the fall, although his employer had been unaware of this fact. (R. 262.) The plaintiff also testified that he had left his mining job in 1972 because his doctor had advised him to leave the mines due to the problems with his lungs. (R. 264.) Large stated that he had not tried to find any type

of work other than coal mining after he left his job in 1972 because there had not been much work available in the county in which he lived. (R. 265.)

Medical expert Edwin L. Bryan, M.D., also testified at the July 1994 administrative hearing. Dr. Byan testified that the record did not show any objective evidence of limitations in the plaintiff's ability to perform basic work activities during the time period from 1972 through December 31, 1978. (R. 278.) Dr. Bryan explained that Large had shortness of breath on exertion as well as chronic colds and bronchitis, but that this would not have affected his ability to perform basic work-related function. *Id.* Dr. Bryan further testified that the plaintiff had the physical capacity to perform certain full range of light work activities and probably the lower range of medium work activities at the time frame in question. *Id.*

Vocational expert Robert H. Ballantyne, Ed.D., also testified at the plaintiff's second administrative hearing. The ALJ proposed to the VE the hypothetical question of what work could be performed by an individual of plaintiff's age, with the same educational background and work experience, during the relevant time period, who could do a full range of light work and a wide range of medium work, and who was precluded from working in cold weather and dusty environments. (R. 283.) The VE responded that an individual with such a vocational profile could perform work in the custodial field in settings such as institutions, offices, hospitals,

and schools. (R. 283.) The VE further noted that such an individual would be able to perform some work in the area of miscellaneous machine operations and in the area of production helping. (R. 284.) The VE indicated that jobs in these various occupational fields existed in significant numbers in the regional and national economies. (R. 283-84.)

Based on the evidence of record, the ALJ determined that prior to December 31, 1978, the plaintiff had the severe impairments of bursitis and chronic obstructive pulmonary disease, but that he did not have an impairment or combination of impairments listed in or medically equal to one listed in the regulations. (R. 224.) The ALJ found that the plaintiff's impairments precluded performance of his past relevant work, but that he retained the residual functional capacity ("RFC") to perform medium level work that would not expose him to an excessively dusty environment and did not involve working outside in cold weather. (*Id.*) Based on the testimony of the VE, the ALJ further found that Large's RFC coupled with his additional nonexertional limitations did not preclude him from performing a significant number of jobs in the national economy during the relevant period. (R. 225.) Thus, the ALJ concluded that the plaintiff was not disabled under the Act. (*Id*.)

-11-

*III. Analysis.*

Large argues that the ALJ's decision was not based on the substantial evidence. Specifically, the plaintiff argues that the ALJ erred as follows: (1) in her determination of the plaintiff's RFC; (2) in her conclusion that the plaintiff's hearing loss was not a severe impairment; (3) in failing to properly consider the combined effect of all the plaintiff's impairments on his ability to work; (4) in failing to give proper weight to the opinion of Dr. Kanwal; and (5) in failing to properly establish that there is other work in the national economy that the plaintiff can perform. I reject the plaintiff's first four arguments, but agree with the fifth.

First, the plaintiff argues that the ALJ's determination that the plaintiff had the RFC to perform at least medium level work activity as long as the work was not outdoors in cold weather or in an excessively dusty environment was not supported by substantial evidence of record. According to the plaintiff, because the ALJ in his first administrative hearing reviewed similar evidence and concluded that he retained the RFC to perform only light work, the doctrine of res judicata prevents the Commissioner from reaching an inconsistent result in the second administrative hearing. In support of this contention, the plaintiff cites the Fourth Circuit case of *Lively v. Secretary of Health & Human Services*, 820 F.2d 1391 (4th Cir. 1987), in which the court explained that "Congress has clearly provided by statute that res

-12-

judicata prevents reappraisal of both the Secretary's findings and his decision in Social Security cases that have become final." *Id.* at 1392 (citing 42 U.S.C.A. § 405(h)). However, because the ALJ's first decision in this case never became final, Large's situation is clearly distinguishable from *Lively* and res judicata is inapplicable.

In *Lively*, the claimant's first application for disability insurance benefits was denied by an ALJ, and that decision was later affirmed by the district court. *Id.* Lively subsequently filed a second application for disability insurance benefits a few weeks after the ALJ denied his first application because he had turned aged fifty-five and thus qualified as an individual of advanced age under the guidelines. *Id.* The issue on appeal to the Fourth Circuit was whether the ALJ presiding over the claimant's second disability application could find that the claimant was capable of work at all levels of exertion when the ALJ presiding over the hearing on the first application had found, in a decision that later became final, that the claimant was capable of only light work. *Id.* The Fourth Circuit held that absent new evidence of an improvement in the claimant's condition, the ALJ's finding on the previous application was binding. *Id.*

In the instant case, however, the 1992 decision finding that Large retained an RFC for light work was not a final decision. The district court reversed and

-13-

remanded the 1992 decision and it was subsequently vacated by the Appeals Counsel. Thus, the ALJ presiding over the subsequent hearing was not bound by the previously vacated decision and was free to find that Large was capable of medium work if substantial evidence from the record supports such a finding. *See Taylor v. Sullivan*, No. C 91-0641 BAC, 1993 WL 219288, at *4 n.1 (N.D. Cal. June 14, 1993) ("When the Appeals Council vacates an ALJ's decision, neither of these decisions become the 'final decision' of the Secretary and they have no res judicata effect.").

The record shows that the plaintiff's lungs were "quite clear" in 1976, that plaintiff's chest X ray showed no frank evidence of pneumoconiosis in 1977, and that plaintiff's chest was still clear on examination as of 1986. (R. 194, 196, 127.) Other evidence in the record reveals that the plaintiff's shoulder bursitis was controlled with Tylenol and Indocin and that he maintained a full range of motion and normal strength. (R. 99.) Accordingly, I find that substantial evidence supports the ALJ's finding of an RFC for medium work.

Secondly, the plaintiff argues that the ALJ erred in her conclusion that his hearing loss was not a severe impairment. Under the regulations, an impairment is "severe" if it significantly limits one's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1521 (2005). Admittedly, "an impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal

-14-

effect on the individual that it would not be expected to interfere with the individual's ability to work," and evidence from the record supports the ALJ's conclusion that the plaintiff's hearing loss had such a minimal effect. *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984). The plaintiff does have a degree of deafness that allegedly occurred in childhood and began to worsen during the 1970's. (R. 192.) In 1976, Dr. Abernathy performed a test that showed a thirty-seven percent hearing loss and diagnosed sensorineural deafness. (R. 194.) Also, in 1977, Dr. Kanwal noted that Large was "markedly hard of hearing." (R. 195.) Other than these two instances, however, the plaintiff's hearing loss is not detailed in the administrative record. As the ALJ pointed out, the plaintiff's deafness was not so severe as to preclude military service and a long work history prior to age fifty. (R. 219.) Therefore, I find that the ALJ's determination that Large's deafness was not a severe impairment is supported by substantial evidence from the record.

Furthermore, contrary to the plaintiff's contention that the ALJ failed to consider his hearing loss in rendering her decision, the ALJ did address Large's deafness in determining the proper RFC. As the plaintiff points out in his brief, in assessing a claimant's RFC, the ALJ must consider the "limitation and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Social Security Ruling 96-8p. Accordingly, in concluding that Large retained the

RFC for at least medium work, the ALJ noted that Dr. Bryan opined that the claimant's impairments of impaired hearing; Raynaud's syndrome; bursitis in his arm, shoulder and elbow; and chronic lung disease, considered singularly or in combination, did not meet or equal any of the Secretary's listings of impairments. (R. 222.) Thus, I find that the ALJ properly discharged her duty to consider the limitations imposed by all of the plaintiffs impairments, including his hearing loss, when she determined his ability to perform work.

The plaintiff next argues that the ALJ erred in failing to give proper weight to the opinion of Dr. Kanwal, who opined that the plaintiff was "totally and permanently disabled." (R. 197.) The ALJ must consider objective medical facts and the opinions and diagnoses of both treating and examining doctors, which constitute a major part of the proof in disability cases. *See McLain v. Schweiker*, 715 F.2d 866, 869 (4th Cir. 1983). In determining what weight to give the opinion of non-treating physicians, the ALJ considers the examining relationship; the length, nature, and extent of treatment; the objective evidence supporting the opinion; and the opinion's consistency with the record as a whole. *See* 20 C.F.R. § 404.1527 (2005). Ultimately, a medical expert's opinion as to the ultimate conclusion of disability is not dispositive and opinions as to disability are reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1). Based on the evidence of record, I find that the ALJ was

-16-

within his authority to discount the weight given to the medical opinion of Dr. Kanwal.

Dr. Kanwal was an examining physician, but the record shows that he examined the plaintiff only once at the request of Large's attorney. Thus, as the ALJ pointed out in her opinion, there is no evidence in the record of an established doctor-patient relationship that would make Dr. Kanwal's opinion deserving of more weight. Furthermore, Dr. Kanwal's opinion that Large was permanently and totally disabled was based on exercise tolerance, but the only objective evidence of limited exercise tolerance was Dr. Kanwal's note about "some" reduction in the plaintiff's $PO_2$ level after exercise. (R. 196.) The clinical evidence of a clear chest and well-treated shoulder bursitis tends to contradict a finding that the plaintiff was permanently disabled. Based on these factors, I find that the ALJ did not abuse her discretion in rejecting Dr. Kanwal's opinion of disability.

Lastly, Large argues that the ALJ erred in failing to properly establish that there is other work in the national economy that the plaintiff can perform. Specifically, he contends that the ALJ presented an incomplete hypothetical question to the VE because she did not include a statement about the plaintiff's hearing loss. For the following reasons, I agree with the plaintiff and remand the case to the Commissioner to take additional evidence from the VE.

-17-

Because the ALJ found that the plaintiff was unable to perform his past relevant work as a welder or miner during the relevant time period, the burden of proof shifted to the Commissioner to establish that there was other work that the plaintiff could perform. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 2000). When, as here, nonexertional limitations are present, the Commissioner is not permitted to discharge that burden by relying on the grids, but instead, she must present vocational evidence. *See McLain*, 715 F.2d at 869. It is well-settled that "in order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all . . . evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (citations omitted). The Commissioner may not rely upon the VE's answer to a hypothetical question if the hypothesis fails to fit the facts. *See Swaim v. Califano*, 599 F.2d 1309, 1312 (4th Cir. 1979).

In this case, the ALJ posed the following hypothetical question:

> Q:     Okay. I want you to assume that we have during the period I mentioned from February 28, 1972 to December 31, 1978. If I find that the evidence supports a conclusion that the individual, or precludes it from working with heavy lifting, i.e., could do a full range of light work and a wide range of medium work, as defined by the Administration. Lifting from 0 to 15 pounds, 25 occasionally, 50 frequently – wait a minute, 50 occasionally and 25 frequently, whatever.

-18-

And was precluded form working outdoors in cold weather. And would not be able to work in environments that included dust. Would there be any jobs that such an individual could have performed? And also during that period of time, we had an individual who ranged in age from a younger individual to closely approaching advanced age, who had a limited education, and had the work profile that was outlined during the hearing and in the record?

. . . .

Q:  Okay fine. Now again, with the same age, education and vocational profile, and pertinent period. If I found that the evidence supported a conclusion that the individual were unable to perform fine manipulation on a clearly sustained basis, would that have an impact on the ability to perform any of the jobs that have been indicated?

(R. 283, 285.)

Large's complaint is that the ALJ failed to indicate in her question that he suffered from hearing loss. Indeed, the ALJ should have included information about Large's hearing impairment in her hypothetical question. The plaintiff's hearing problem is well substantiated by the administrative record. The ALJ herself found that the plaintiff had a degree of deafness, and the record also reveals that an objective test revealed a thirty-seven percent hearing loss and an examining doctor diagnosed sensorineural deafness. (R. 194.)

While the plaintiff's hearing loss may not have risen to the level of a severe impairment under the regulations, it could have an effect on the availability of jobs in the national economy that the plaintiff could perform. Without mentioning this

-19-

impairment, the ALJ's hypothetical to the VE could not properly apprise the VE of the true extent of Large's abilities and limitations, as required by the Fourth Circuit. *See Walker*, 889 F.2d at 51. Thus, I must find that the ALJ's opinion is not supported by substantial evidence.[3]

The plaintiff urges the court to reverse the Commissioner's decision rather than remand the case, in light of the fact that the his claim was initially filed over thirteen years ago. Admittedly, much of the extraordinary delay in this case was beyond his control, but the plaintiff shoulders at least some responsibility for the fact that approximately three years passed between the time he agreed to vacate the October 6, 2000, order remanding the case and the date upon which this court was asked to reopen the case. Furthermore, this is not a case in which a finding of disability seems irrefutably clear and "reopening the record would serve no useful purpose." *Miller v. Callahan*, 964 F. Supp. 939, 956 (D. Md. 1997) (citing *Millner v. Schweiker*, 725 F.2d 243, 246 (4th Cir. 1984)). Thus, while I sympathize with the plaintiff's desire for finality, I find that remand rather than reversal is the appropriate course of action.

---

[3] The plaintiff also argues that the determination that he could perform other work was further flawed by the ALJ's reliance on inaccurate VE testimony, citing discrepancies between the available jobs listed by the VE and the corresponding skill levels in the Dictionary of Occupational Titles. Because I find that the VE's testimony is irrelevant due to the incomplete hypothetical question posed by the ALJ, I need not address this argument.

Case 2:00-cv-00100-JPJ   Document 14   Filed 01/06/06   Page 20 of 21   Pageid#: 72

*IV.  Conclusion.*

For the foregoing reasons, the parties' motions for summary judgment will
be denied and the case will be remanded for further administrative consideration
and development consistent with this opinion.

An appropriate judgment will be entered.

DATED: January 6, 2006

/s/ JAMES P. JONES
Chief United States District Judge